JUDGE RAKOFF

'09 CIV 9456

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEED INDUSTRIES INC.,

                              Plaintiff,

            - against -

NEW YORK STATE DEPARTMENT
OF LABOR ("DOL"), BUREAU OF
PUBLIC WORKS,

M. PATRICIA SMITH, COMMISSIONER OF
LABOR OF THE STATE OF NEW YORK,

JEAN MESSIER, INDIVIDUALLY AND IN
HER CAPACITY AS PUBLIC WORK WAGE
INVESTIGATOR EMPLOYED BY THE
DOL,

STEPHAN C. BARBER, INDIVIDUALLY
AND IN HIS CAPACITY AS PUBLIC WORK
WAGE INVESTIGATOR EMPLOYED BY
THE DOL,

                              Defendants.

Index No.

COMPLAINT



Plaintiff, **LEED INDISTRIES INC.**, by and through its attorneys, ZABELL &

ASSOCIATES, P.C., complains and alleges as follows:

## I.    PRELIMINARY STATEMENT

1. Plaintiff brings this action to recover monetary sums and affirmative relief

    resulting from Defendants' violations of The Racketeer Influenced and Corrupt

    Organizations Act (RICO, 18 U.S.C. §§ 1961 *et seq.*); the New York State Labor

Law (hereinafter "NY Labor Law"), N.Y. LAB LAW § 220-b, *et seq.* (McKinney's 2002), the Civil Rights Act, 42 U.S.C. § 1983, and other appropriate rules, regulations, statutes and ordinances.

## II.    JURISDICTION AND VENUE

2. This court has jurisdiction over this action pursuant to 18 U.S.C. § 1364, 28 U.S.C. §§ 1331, 1337, and 1343(3).

3. This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. § 1367.

4. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

## III.    THE PARTIES

6. LEED INDISTRIES INC. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in the County of Westchester and State of New York.

7. LEED INDISTRIES INC. Corp. is a "person" within the meaning of 18 U.S.C. § 1961(3).

8. Defendant New York State Department of Labor ("DOL") is a New York State administrative agency.

9. Defendant Bureau of Public Works ("Public Works") is a sub-division of the New York State Department of Labor.

10. Defendant M. Patricia Smith ("Smith") is the present Commissioner of the DOL.

11. Defendant Jean Messier ("Messier") is a Public Works wage investigator employed by the DOL and upon information and belief, is a resident of the State of New York.

12. Defendant Stephan Barber ("Barber") is a Public Works wage investigator employed by the DOL and is a resident of the State of New York.

13. Defendants constitute an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

## IV.   FACTS

13. Plaintiff repeats and realleges each and every allegation contained herein.

14. Since 2002, Plaintiff has been engaged in the business and has successfully bid upon and completed many public works projects governed by the Prevailing Wage Laws of New York State.  Plaintiff employs non-building trade Union labor, and is well known in the industry for its high quality of workmanship.

15. Pursuant to New York law and where applicable, federal law dictates that contractors employed on public works projects are required to pay their employees prevailing wages and supplements.

16. The DOL delegated to private concerns, the obligation to establish prevailing wage rates.  This has resulted in Unions artificially inflating prevailing wage rates in an effort to eradicate non-Union employers.

17. At all times relevant herein, Plaintiff has complied with these stringent requirements.

18. New York prevailing wage laws allow the DOL to withhold (from any payment due a contractor) sufficient funds to satisfy unpaid wages or supplements, when such wages and supplements "appear to be due" as the result of an investigation.

19. New York prevailing wage laws direct the DOL to provide notice to the contractor of the facts contained within such an investigation.

20. Beginning in 2008, the DOL began investigating Plaintiff to determine if prevailing wage rates and corresponding supplements were paid to its employees working on a public works project performed throughout New York.

21. On all of Plaintiff's public works projects Plaintiff's employees classify and report their own hours between hours spent working as "roofers" and hours spent working in other classifications. This process is in full compliance with local practice.

22. Defendants willfully failed to provide Plaintiff with an actual complaint, allegations and/or a complete audit of the Agency's findings.

23. Defendants, acting individually and in concert (with themselves, and others), "estimated" that Plaintiff failed to pay its employees wages in excess of $1,700,000.00 with interest and statutory penalties with respect to all projects being investigated.

24. Defendants failed to properly commence administrative proceedings regarding the aforementioned withholding, and further, intentionally failed to provide Plaintiff with an opportunity to determine the legitimacy of such Withholdings.

25. Defendants failed to comply with their own internal policies and procedures prior to issuing the unsubstantiated withholding notices.

26. On or about April 27, 2009 and again on May 20, 2009 after numerous demands were made, Plaintiff, *via* written correspondence, again demanded an expedited administrative hearing pursuant to New York State Labor Law §§ 220(8) and 220-b.

27. Despite this fact, Plaintiff was denied the opportunity for an expedited hearing as provided by New York State Labor Law §§ 220(8) and 220-b; thus depriving Plaintiff of its constitutionally protected right to due process of law.

28. On numerous occasions, Plaintiff has demanded the release of all withheld funds from the Newburgh project and all other ongoing prevailing wage jobs.

29. To date, the DOL has refused to release the aforementioned funds.

30. In an effort to facilitate the release of funds withheld from Plaintiff's existing or ongoing prevailing wage projects, Plaintiff, through counsel, met telephonically with Investigators Messier and Barber on several occasions and reiterated plaintiff's request for the release of funds and an immediate hearing.  Plaintiff's requests were again denied without basis.

31. Furthermore, during these meetings, Investigator Messier implied that she would expand the scope of the DOL investigations to Plaintiff's other ongoing prevailing wage projects if Plaintiff continued his objection to the DOL's withholding.

32. Messier also indicated directly to Leed Industries Inc. personnel that Plaintiff could resolve the situation by stating that Plaintiff should sign a collective bargaining agreement with organized labor.

33. Despite the foregoing, Plaintiff refused to be extorted by the DOL and Investigators Barber and Messier.

34. When it became clear that Leed Industries, Inc. would not succumb to the Department of Labor's extortionist tactics, Defendant Messier began spreading false, slanderous and injurious statements about Leed Industries Inc. amongst Leed Industries customers.

35. Defendants' conduct, as set forth above was undertaken in bad faith and is designed to financially cripple Plaintiff and terminate its business; force Plaintiff to settle unfounded and false claims; punish Plaintiff for engaging in constitutionally protected activities; and assist the Union in its pursuit of "targeted," non-Union contractors. In addition, the conduct as set forth above and herein was undertaken with the full support and active participation of Trade Union Council, Union employees, and Union members in an effort to artificially increase Union membership and discourage non-Union employers from bidding on, and receiving prevailing wage work.

36. The aforementioned withholdings imminently threaten Plaintiff's continued financial viability and its continued ability to employee citizens of the State of New York.

37. Defendants' actions have deprived Plaintiff of working capital, the absence of which jeopardizes Plaintiff's ability to satisfy contractual obligations on its ongoing public works contracts.

38. Defendants' actions have virtually eliminated Plaintiff's ability to bid on and receive other public works contracts and has permanently damages Plaintiff's dealings with its suppliers.

39. Defendants' application of the law, and actions taken under color of law, have caused, and will continue to cause Plaintiff substantial and irreparable harm for which no alternative remedy exists.

## DEFENDANTS' PATTERN OF EXTORTION AND FRAUDULENT CONDUCT: THE BAD FAITH WAGE "INVESTIGATIONS"

40. Plaintiff repeats and realleges each and every allegation contained herein.

41. The DOL has conspired with various Unions to establish inflated wage rates, preclude non-Union employers from bidding on, and receiving, public works projects by only targeting and auditing non-Union contractors working on public works projects.

42. Specifically, the DOL and various Unions conspired to artificially inflate the prevailing wage rate for jobs within the State of New York.  Once the artificial rate was established, only contractors who have not signed collective bargaining agreements with organized labor were obligated to comply with the artificial rate.  This manner chosen by the DOL to set the prevailing wage and supplement rate violates Plaintiff's constitutionally protected due process rights.

7

43. Further, the DOL has unconstitutionally delegated its statutory authority to a private party, who artificially raised the prevailing wage rate knowing that the DOL would not investigate such practices.

44. In doing so, the DOL has acted with the manifest purpose and inevitable effect of unilaterally supporting one (1) private party (organized labor).

45. Despite the Defendants' denials, several Unions and Union trade councils have been intimately involved in the DOL's wage audits and investigations of Plaintiff's business.

46. Indeed, the Unions actively participated in (if not the sole catalyst for) the wage and hour investigations and audits.

47. Investigators Barber and Messier attended trade council meetings where non-Union contractors were targeted for investigation.

48. The DOL has consistently failed to investigate Union employers even after being provided with direct evidence of failure(s) to pay prevailing wage rates.

49. Defendants, in conjunction with various Unions, have partaken in the conduct of targeting non-Union contractors for wage and hour investigations and audits.

50. Defendants and these various Unions constitute an enterprise that are associated together for a common purpose of precluding non-Union employers from bidding on and receiving public works project, artificially inflating prevailing wage rates and have worked together to achieve that purpose.

51. Defendants, in a close working relationship with these Unions, have demonstrated a pattern of improperly and inequitably targeting non-Union

contractors working on public works projects for wage and hour investigations and audits.

52. These activities; to wit, improperly withholding funds from Plaintiff, have needlessly and unnecessarily interfered with commerce.

53. The actions of Defendants and the Unions have injured Plaintiff and its business and property by denying it capital necessary to bid on other public works projects as well as operate its day-to-day business activities.

54. The actions of Defendants and the Unions have injured the people of the State of New York by artificially inflating the wages that must be paid to workmen working on public jobs.

## V.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(18 U.S.C. § 1961 et seq. · Violation of RICO Law)

55. Plaintiff repeats and realleges each and every allegation contained herein.

56. Defendants' conduct has included the following specific acts:

(a) impermissibly targeting and investigating Plaintiff due to its use of non-Union labor;

(b) conspiring with private parties in a dispute to artificially inflate the prevailing wage rates in certain jurisdictions;

(c) unconstitutionally delegated its statutory authority to Union members who in turn, artificially inflate wage rates, investigated and coerced Plaintiff's employees.

(d) delayed the onset of wage and hour investigations for many months without

cause or basis;

(e) delaying resolution of the investigation;

(f) refusing to disclose the basis of the audit and supply documentation pertaining thereto;

(g) threatening to extend the investigation to Plaintiff's other ongoing prevailing wage job sites;

(h) stating that the investigations, audits and withholdings would cease if Plaintiff signed a collective bargaining agreement with organized labor.

(i) applying interest to the withholdings for the time period in which the DOL intentionally delayed the proceedings; and

(k) applying a civil penalty without consideration of statutory prerequisites.

57. These actions constitute a deliberate and long standing pattern & practice.

58. Racketeering activity may be defined as acts indictable under federal law, including predicate mail and wire fraud, as well as a criminal conspiracy and extortion. 18 USC § 1341, § 1343, the Hobbs Act § 1951, § 1961(1)(b).

59. These actions constitute extortion because Defendants deprived Plaintiff of its property (including, but not limited to, its interest in being paid in full for the work it completed, and its right to pursue additional projects) by acting under color of state law.

60. Defendants' aforementioned actions are the factual and proximate cause of Plaintiff's injuries.

61. The continued withholding of funds owed to Plaintiff impermissibly interferes

with interstate commerce and threatens Plaintiffs' continued financial viability.

## SECOND CLAIM FOR RELIEF
### (42 U.S.C. § 1983 · Violation of Due Process Rights)

62. Plaintiff repeats and realleges each and every allegation contained herein.

63. Defendants have, among other things:

(a) delayed the onset of an investigation for many months;

(b) delayed resolution of the investigation;

(c) refused to disclose the basis of the audit and supply documentation pertaining thereto;

(d) applied interest to the Withholdings for the time period in which the DOL intentionally delayed the proceedings; and

(e) applied a civil penalty without consideration of statutory prerequisites.

64. Defendants have violated 42 U.S.C. § 1983 by acting under color of state law and depriving Plaintiff of its property (including, but not limited to, its interest in being paid in full for the work it completed, and its right to pursue additional projects) without due process of law under the Fifth and Fourteenth Amendments of the Constitution of the United States.

65. The continued withholding of funds owed to Plaintiff violates Plaintiff's constitutional rights as aforesaid. The withholdings should be delivered to Plaintiff forthwith along with all penalties that were inappropriately levied against Plaintiff.

## THIRD CLAIM FOR RELIEF
(New York Labor Law § 220-b is Unconstitutional as Applied)

66. Plaintiff repeats and realleges each and every allegation contained herein.

67. New York Labor Law §220-b ("Section 220-b") provides adequate notice of what conduct is prohibited: contractors can read Section 220-b and understand that they must pay the prevailing rate of wages for on-site work done on public works projects.

68. Defendants acted with unfettered discretion in the application of Section 220-b as follows:

(a) the Withholdings do not "appear to be due" under New York Labor Law or the New York Department of Labor Regulations;

(b) ignored relevant evidence, relied upon fictitious employees, overstated the number of employees actually employed by Plaintiff, and overstated the number of hours worked by Plaintiff's employees and relied upon fictitious and artificial prevailing wage rates in its investigations of Plaintiff;

(c) performed the audit in bad faith;

(c) misclassified workers to the detriment of Plaintiff;

(e) the Withholdings fail to meet the probable cause standard required under the constitution;

(f) Despite the requirement that the DOL make an objective and rational determination that Plaintiff "appear[ed] to be" in violation of the New York Labor Law, due process in the DOL proceedings rests solely on Barber and Messier.

69. In short, Section 220-b allowed Barber and Messier to conduct investigations that were "arbitrary in the methods and inscrutable in the results."

70. In addition, Defendants are given unfettered discretion in interpreting and implementing Section 220-b.

71. Defendants refused and continue to refuse Plaintiff access to an administrative hearing.

72. Accordingly, Plaintiff cannot defend itself in the state administrative proceeding.

73. Defendants prosecuted Plaintiff for wage and hour investigations and audits in bad faith and solely began such investigations and audits in an attempt to harass Plaintiff seemingly for his hiring and utilization of non-Union labor.

## FOURTH CLAIM FOR RELIEF
### (INJUNCTIVE RELIEF)

74. Plaintiff repeats and realleges each and every allegation contained herein.

75. Plaintiff requests prospective injunctive relief against Defendants to cease their continuing violations of federal and state law.

76. Plaintiff further requests an Order against all Defendants directing the immediate release of all funds subject to the DOL Withholdings.

77. Plaintiff further requests an Order declaring the DOL's methods and process for determining prevailing wage rates is unconstitutional.

## VI.   DAMAGES

78. Defendants (other than the DOL itself) are responsible for damages as a result of their personal and individual actions performed in concert and with the consent of the DOL.

79. Plaintiff is entitled to threefold the damages it sustained from Defendant DOL pursuant to 18 U.S.C. 1964(c).

80. Plaintiff requests damages in an amount to be determined by the trier of fact against each Defendant (other than the DOL itself) individually, because each such defendant was personally involved in the above-mentioned constitutional deprivations.

## VII.   PUNITIVE DAMAGES

81. The actions of Defendants are part of a pattern of such actions establishing a reckless disregard and indifference to "due process" and other federally protected rights of Plaintiff and others for which punitive damages in the amount of to be determined by the trier of fact should be awarded.

## VIII.   ATTORNEYS' FEES

82. Plaintiff is entitled to costs and attorneys' fees pursuant to 42 U.S.C. § 1988(b) and 18 U.S.C. § 1964(c).

h. Award Plaintiff punitive damages in the amount to be determined by the trier of fact;

i. Award Plaintiff pre and post judgment interest, where applicable; and

j. Award Plaintiff such other further and different relief as to the Court may deem just, proper and equitable, including the costs, expenses and disbursements of this action.

Dated:   Bohemia, New York
         November 11, 2009

                                 ZABELL & ASSOCIATES., PC
                                 *Attorneys for Plaintiff*

                          By: _____
                                 Saul D. Zabell (SZ 2738)
                                 ZABELL & ASSOCIATES, P.C.
                                 4875 Sunrise Hwy., Suite 300
                                 Bohemia, New York 11716
                                 Tel. (631) 589-7242
                                 Fax (631) 563-7475
                                 szabell@laborlawsny.com